IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TERESA CHARLES and SUSAN WAGNER,

                Plaintiffs,                    OPINION AND ORDER

    v.                                      12-cv-463-wmc

DEPARTMENT OF HEALTH SERVICES,
DENNIS G. SMITH, in his official capacity, and
BRETT DAVIS, in his official capacity,

                Defendants.

---

In this action, plaintiffs Theresa Charles and Susan Wagner assert that officials in the Wisconsin Department of Health Services violated their federal Medicaid rights by failing to furnish medical assistance under the Badgercare Plus Core Program for Childless Adults (the "Core Program") with "reasonable promptness" as required by 42 U.S.C. § 1396a(a)(8). Defendants have moved to dismiss, contending that plaintiffs do not have a private right of action under § 1396a(a)(8) to enforce a demonstration project such as the Core Program. For the reasons that follow, the court will deny the motion to dismiss and allow plaintiffs to proceed with their claim pursuant to 42 U.S.C. § 1983.


BACKGROUND

"The Medicaid program, 42 U.S.C. § 1396 *et seq.*, allows states to provide federally subsidized medical assistance to low-income individuals and families." *Bontrager v. Ind. Family and Soc. Servs. Admin.*, 697 F.3d 604, 605 (7th Cir. 2012). As does every other

state, Wisconsin participates in Medicaid.  The Wisconsin Department of Health Services ("WDHS") is the state agency charged with the administration of Wisconsin's Medicaid-eligible healthcare program.  *See* Wis. Stat. § 49.45 *et seq.*

Once a state chooses take part in Medicaid, it must comply with all federal statutory and regulatory requirements governing the type of services provided and the eligibility criteria for individual applicants.  *Bontrager*, 697 F.3d at 606.  The United States Department of Health and Human Services ("DHHS") may, however, waive statutory requirements as necessary to enable states to establish demonstration projects that test new ways to deliver and pay for health care services.  *See* 42 U.S.C. §§ 1315, 1396n.

In 2008, WDHS applied for just such a federal waiver to institute a new demonstration project -- the Badgercare Plus Core Program for Childless Adults (the "Core Program").  *See* Wis. Stat. § 49.45(23).  The Core Program expands healthcare assistance to individuals who would not otherwise be eligible for coverage under the federal Medicaid Act: "adults without dependent children, between the ages of 19 and 64 and with incomes that do not exceed 200 percent of the Federal Poverty Level."  (2009 Letter of Special Terms and Conditions, dkt. #3-1, at 3.)  DHHS approved the Core Program.  In a 2009 Special Terms and Conditions Agreement, DHHS set out the specific federal requirements that had been waived for the Program.  The Special Terms and Conditions Agreement was subsequently renewed in 2012.

By accepting Medicaid funds, Wisconsin has agreed to be bound by the basic Medicaid requirements, including the requirement at § 1396a(a)(8) that "all individuals

wishing to make application for medical assistance under [a state's] plan shall have [an] opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals."  42 U.S.C. § 1396a(a)(8).  To help establish the Wisconsin Core Program, DHHS waived this reasonable promptness requirement, but only

> [t]o the extent necessary to enable the State to cap enrollment for the Demonstration-Eligible Population, and to delay provision of medical assistance until 15 days after the date when the individual is determined eligible for coverage, or the date of enrollment into the Health Maintenance Organization (HMO), whichever is sooner.

(2012 Letter of Special Terms and Conditions, dkt. #3-2, at 1.)

DHHS approved WDHS's request for an enrollment cap of 48,500 persons for the Core Program, effective October 1, 2009.   (Dkt. #3-1 at 1.)  However, WDHS allowed all persons with applications pending as of October 1, 2009 – 65,265 individuals in total -- to join the program.  Applications submitted after institution of the cap were sent to a waiting list.  Since January 2010, the number of persons enrolled in the Core Program has dropped, as initially-enrolled participants have become ineligible or voluntarily withdrawn.  Despite this, WDHS has not moved any eligible beneficiaries from the waiting list to the program rolls.  Indeed, at the time that the plaintiffs filed their complaint, only 26,000 persons remained enrolled in the Core Program, while over 130,000 persons on the waiting list.

Plaintiffs Theresa Charles and Susan Wagner allege that they are eligible for Wisconsin's Core Program and have been on the waiting list for over two years.  Theresa is a resident of Milwaukee County and suffers from chronic lung problems that require

3

regular, ongoing medical treatment.  Susan is also a resident of Milwaukee County and suffers from a seizure disorder that requires regular, ongoing medical treatment. Plaintiffs bring this action against WDHS, the Secretary of WDHS, Dennis G. Smith, and the Administrator of the Division of Health Care Access and Accountability within WDHS, Brett Davis, pursuant to 42 U.S.C. § 1983, alleging that if there is room for them under the 48,500 cap, then they have a federal right to medical assistance furnished "with reasonable promptness."[1]

OPINION

Defendants' motion to dismiss alleges that plaintiffs fail to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).  To survive, plaintiffs' complaint must contain factual allegations that "raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); Fed. R. Civ. P. 8(a).[2]

---

[1] Defendant WDHS is likely not a proper defendant because WDHS is a state agency, and thus not a suable "person" under 42 U.S.C. § 1983.  *See Thomas v. Illinois*, 697 F.3d 612, 613 (7th Cir. 2012).  Since the parties have not raised the issue, the court will reserve on this until a later date.

[2] Defendants have attached certain documents in support of their motion to dismiss, but this does not turn their motion into one for summary judgment.  "'Documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim.'"  *Menominee Indian Tribe of Wis. v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998) (quoting *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994)). Here, defendants have attached the old Terms and Conditions from 2009, referred to in the Complaint, and the current Terms and Conditions, which took effect as of July 1, 2012.

This lawsuit is founded upon the Civil Rights Act of 1871, 42 U.S.C. § 1983, which provides a cause of action against any "person who, under color of any [state law] . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the [federal] Constitution and laws." Defendants argue that plaintiffs have no cause of action under § 1983 because they have no federal rights under the Medicaid statutes with respect to the Core Program. First, defendants argue that although 42 U.S.C. § 1396a(a)(8) imposes a duty upon states to furnish "assistance . . . with reasonable promptness to all eligible individuals," this statutory mandate does not confer upon eligible individuals a *right* to such assistance. Second, and more narrowly, defendants argue that if § 1396a(a)(8) confers a right, it only does so for those who would be eligible for assistance under the basic standards set forth in the Medicaid statutes, not for those who only qualify for expanded coverage under state-created demonstration projects. At least on the limited record before it to date, the court finds neither of these arguments persuasive.

## I. Federal Rights created by 42 U.S.C. § 1396a(a)(8) and Similar Provisions of the Medicaid Act

Section 1396a(a)(8) is not self-enforcing – it does not provide a private right of action. *Bertrand ex rel. Bertrand v. Maram*, 495 F.3d 452, 456 (7th Cir. 2007). But it may create federal rights that are enforceable against persons acting under color of state law, pursuant to 42 U.S.C. § 1983. This is true even though the Medicaid Act was enacted pursuant to Congress' spending powers and the federal government retains the authority

5

to cut funding for failing to comply with Medicaid obligations.  *See Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 522 (1990) (holding that as a general matter the Medicaid Act can be enforced under § 1983 and that the federal government's authority to curtail federal funds was not "sufficiently comprehensive to demonstrate a congressional intent to withdraw the private remedy of § 1983").

In *Blessing v. Freestone*, 520 U.S. 329 (1997), the United States Supreme Court crafted a three-part test to evaluate whether a federal statute confers a federal right enforceable under § 1983:

> First, Congress must have intended that the provision in question benefit the plaintiff.  Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence.  Third, the statute must unambiguously impose a binding obligation on the States.  In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms.

*Id.* at 340-41 (internal and other citations omitted).

After review, this court agrees that § 1396a(a)(8) satisfies the *Blessing* test and therefore confers a federal right enforceable by § 1983.  As to the first prong, in *Gonzaga University v. Doe*, 536 U.S. 273 (2002), the Supreme Court emphasized that in legislation enacted pursuant to the spending power, "if Congress wishes to create new rights enforceable under § 1983, it must do so in clear and unambiguous terms." *Id.* at 290. *Gonzaga* teaches that this court must look to "the text and structure of a statute" to find an "indication that Congress intend[ed] to create new individual rights."  Section 1396a(a)(8) seems to reflect this intent.  Individual applicants are the object of, and focus of, the statute, which speaks in terms of affirmative duties owed to "all eligible

6

individuals."  The section is "concerned with 'whether the needs of any particular person have been satisfied,'" rather than agency policies in the "aggregate."  *Id.* at 288 (quoting *Blessing,* 520 U.S., at 343, 117 S.Ct. 1353.)

As to the second prong, the right is neither vague nor amorphous.  The most vague part of the statute is the requirement that assistance be furnished with "reasonable promptness."  But a determination of reasonableness is a daily undertaking for many courts, and is well within the judicial competence.

As to the third prong, once a state has chosen to take part in Medicaid, "it must comply with all federal statutory and regulatory requirements."  *Bontrager,* 697 F.3d at 606 (quoting *Miller,* 10 F.3d at 1316).  Section 1396a(a)(8) is one of the requirements imposed upon participating states in mandatory terms.  That the Secretary of DHHS may only withdraw funding when there is a "failure to comply substantially" with the program provisions, 42 U.S.C. § 1396c, does not take away from the language of the statute mandating reasonable promptness to all eligible individuals, thus creating an individual right.  See *Wilder,* 496 U.S. at 521-22 (DHHS Secretary's ability to curtail federal funds does not displace § 1983 rights).

Case law supports the court's application of the *Blessing* test.  The First, Third, Fourth, and Eleventh Circuits have squarely addressed the issue and held that § 1396a(a)(8) may be enforced by private litigants pursuant to § 1983.  *See Doe v. Kidd,* 501 F.3d 348, 355-57 (4th Cir. 2007); *Sabree ex rel. Sabree v. Richman,* 367 F.3d 180, 189-93 (3d Cir. 2004); *Bryson v. Shumway,* 308 F.3d 79, 88-89 (1st Cir. 2002); *Doe v. Chiles,* 136 F.3d 709, 715-719 (11th Cir. 1998).  Admittedly, the Seventh Circuit has

never answered this question definitively, but it has on two occasions assumed, albeit without expressly finding, that such a right exists.   See *Bertrand*, 495 F.3d at 457; *Bruggeman v. Blagojevich*, 324 F.3d 906, 910-11 (7th Cir. 2003).

Moreover, recent decisions on comparable statutory provisions suggest that the Seventh Circuit would join its sister courts in finding that § 1396a(a)(8) creates a federal right.   For example, in *Bontrager v. Indiana Family and Social Services Administration*, 697 F.3d 604 (7th Cir. 2012), the Seventh Circuit held that 42 U.S.C. § 1396a(a)(10)(A) of the Medicaid Act, which is largely identical to § 1396a(a)(8), may be enforced by private litigants.[3]  *Id.* at 606-07.   Accord *Watson v. Weeks*, 436 F.3d 1152, 1159-61 (9th Cir. 2006); *Sabree*, 367 F.3d at 189-92; *S.D. ex rel. Dickson v. Hood*, 391 F.3d 581, 604-06 (5th Cir. 2004).   One month after it decided *Bontrager*, the Seventh Circuit came to the same conclusion with respect to another, similar Medicaid provision, 42 U.S.C. § 1396a(a)(23)(A).[4]   See *Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health*, 699 F.3d 962, 974 (7th Cir. 2012).

## II.  Federal Rights created by 42 U.S.C. § 1396a(a)(8) in the Context of § 1115 Demonstration Programs

Defendants argue that even if § 1396a(a)(8) confers a federal right enforceable under § 1983, the right is given only to persons eligible for coverage under "basic"

---

[3] Section 1396a(a)(10)(A) provides: "A State plan for medical assistance must . . . provide . . . for making medical assistance available, . . . to . . . all [eligible] individuals . . . ."

[4] Section 1396a(a)(23)(A) provides: "A State plan for medical assistance must . . . provide that . . . any individual eligible for medical assistance . . . may obtain such assistance from any institution, agency, community pharmacy, or person, qualified to perform the service or services required."

Medicaid, and certain demonstration programs borrowed from the federal Medicaid statutes, but not to persons eligible for state-designed programs created under § 1115 of the Medicaid Act.  To understand the distinction between these types of programs, it may be useful to keep in mind that Medicaid demonstration programs generally fall into three categories.  In the first category, the "Section 1915(c) Home and Community-Based Services Waiver" programs, states may choose to offer their citizens certain optional or expanded benefits enumerated by federal statute.  *See* 42 U.S.C. § 1396n(c).  The second waiver category, the "Section 1915(b) Managed Care Waiver," allows states to restrict beneficiaries' choice of providers by implementing managed-care systems.  42 U.S.C. § 1396n(b).  The third category, "Section 1115 Research and Demonstration Projects" – which is at issue in this case – permits the DHHS Secretary to waive compliance with certain aspects of § 1396a as needed to allow states to implement their own experimental, pilot or demonstration projects.  42 U.S.C. § 1315(a)(1).

Defendants observe that for purposes of a § 1983 lawsuit, federal statutes may confer a federal right, but ancillary agreements between a state and the federal agencies do not.  *Blessing*, 520 U.S. at 340-41.  From this starting point, they maintain that if Congress intended to extend a federal right under § 1396a(a)(8) to participants in demonstration programs, it could only have done so to participants in programs comprehensively described in the Medicaid Act in §§ 1915(b) & (c), and not programs invented by the states pursuant to authority granted by § 1115.  Their reasoning is that the eligibility rules for the former programs are set forth by a federal statute, whereas eligibility rules for the latter are entirely designed by states and only memorialized in

9

contractual agreements between the Centers for Medicare and Medicaid Services (DHHS) and state agencies.[5]

The apparent flaw in this argument is that the *source* of an individual's federal right is not found in laws allowing states to opt into demonstration plans, but in 42 U.S.C. § 1396a, which by its express terms creates baseline standards for *all* Medicaid activity.  For this reason, the Seventh Circuit had held that once a state has chosen to take part in Medicaid, "it must comply with all federal statutory and regulatory requirements." *Bontrager*, 697 F.3d at 606. *Accord Bryson v. Shumway*, 308 F.3d 79, 89 (1st Cir. 2002) ("The strictures of § 1396a(a)(8) should apply with no less force to opt-in plans such as the waiver program, [because o]nce the waiver plan is created and approved, it becomes part of the state plan and therefore subject to federal law; the waiver plans must meet all requirements not expressly waived.").  One need only glance at the Special Terms and Conditions contract creating the Wisconsin Core Program to see this – DHHS is granting Wisconsin waivers from compliance with § 1396a terms that would otherwise automatically apply.  Given that § 1396a(a)(8) creates a right to receive prompt service for *all eligible beneficiaries for all Medicaid plans* and is part of the same statutory framework that expressly invites states to create new classes of eligibility in their demonstration projects, it would seem obvious that the rights found in § 1396a(a)(8) were intended by Congress to extend to these benefits as well.

Taking a different tack, defendants appears to argue in the alternative that the federal rights created by § 1396a(a)(8) simply evaporate when applied to § 1115 plans.

---

[5] The agreements in this case are the 2009 Special Terms and Conditions and the 2012 Special Terms and Conditions.

For this proposition, they rely entirely on *dicta* in the Seventh Circuit's decision in *Bertrand ex rel. Bertrand v. Maram*, 495 F.3d at 457. But *Bertrand* is factually distinguishable from this case, and in any event its *dicta* is not presently binding authority, nor particularly persuasive, at least when taken out of context.

*Bertrand*'s analysis begins with the observation that the Medicaid waiver program gives DHHS the authority to waive Medicaid obligations that would otherwise apply to demonstration projects, including the general obligation under § 1396a(a)(8) to promptly supply medical services for every eligible person. *Id.* In *Bertrand*, as in this case, DHHS had partially waived the § 1396a(a)(8) requirement, allowing the Illinois Department of Healthcare and Family Services to implement a 10,000 person cap on enrollment in its demonstration project. *Id.* Rather than assigning eligibility on a first-come-first-served basis as here, however, Illinois had developed a method of calculating program eligibility based on demonstrated need, and DHHS had written this calculation methodology directly into the terms of the federal waiver. *Bertrand v. Maram*, No. 05 C 0544, 2006 WL 2735494, at *6 (N.D. Ill., Sept. 25, 2006) (unpublished).

When the *Bertrand* plaintiffs were found insufficiently needy under Illinois' methodology and were turned away, they sued for admission to the demonstration project under § 1396a(a)(8). As here, the plaintiffs' theory in *Bertrand* was that they could not be turned down from a program that had not reached its 10,000-person cap. 495 F.3d at 457. Illinois responded that the cap had been reached, except for a very small number of spots kept open by design – under the needs-based admission principles, the state had to keep a minimal number of spots available at all times to be sure that the

11

most needy recipients always had immediate access to the program. *Id.* The plaintiffs resisted this interpretation of the waiver terms.

Against this backdrop, Judge Easterbrook noted that the plaintiffs were attempting to "dictat[e the] means [of] implement[ing] a limited-enrollment program" by using § 1396a(a)(8) as a tool to override the waiver. *Id.* The flaw in plaintiffs' approach, Judge Easterbrook explained, was that the federal waiver power trumps ordinary requirements such as § 1396a(a)(8), and not the other way around. *Id.* In light of the superior authority of the waiver power, Judge Easterbrook questioned whether a § 1396a(a)(8) enforcement suit is the appropriate vehicle to get a judicial determination of "whether the state's program accurately carries out the [waiver] conditions negotiated with the federal government." Notably, though, all of Judge Easterbrook's musings were confined to considerations of adjudicative practicality. He made no attempt to apply the *Blessing* test or to seriously analyze the critical question here: whether Congress intended to extend the right to a prompt opportunity to participate in §1115 demonstration projects, just as it has for all other eligible beneficiaries.

Even if it applied to the issue here, it is doubtful that *Bertrand*'s logic would apply to defendants' pending motion to dismiss. Judge Easterbrook spoke in broad terms, purporting to analyze "the application of § 1396a(a)(8) to a supplemental state program approved under a waiver." But the facts of *Bertrand,* as well as Judge Easterbrook's specific concerns, apply only to a limited sub-set of cases within this category – cases in which there is an attempt to "dictat[e the] means [of] implement[ing] a limited-enrollment program" or to otherwise challenge the state's *interpretation of the terms* of a

federal waiver. *Id.* There will be other cases – perhaps the majority of suits under § 1396a(a)(8) against a §1115 demonstration project – where there will be no dispute about "whether the state's program accurately carries out the conditions negotiated with the federal government," and no need for the DHHS Secretary's input to "avoid the empty-chair problem." *Id.* In these cases, the plaintiff will simply be suing to participate in the program, and both sides will agree about the effect of the federal waiver; in fact the waiver will not be in issue at all.

Looking just at the complaint, as the court must in a Rule 12(b)(6) motion, we appear to have just such a case here. Nothing in the complaint suggests that plaintiffs are challenging defendants' implementation of the terms of the federal waiver. Indeed, the plaintiffs appear to have no quarrel with the calculation of the 48,500-person cap. The plaintiffs appear to be seeking simple enforcement of the state's obligations *consistent with* the plain terms of the waiver.

In response, defendants suggest that, like the defendants in *Bertrand*, they will soon present an argument that by unilaterally lowering the cap they are acting entirely consistent with the waiver negotiated with DHHS. (*See* Br. Opp., dkt. #3 at 8.) In other words, plaintiffs' § 1396a(a)(8) challenge raises questions about the precise terms of waiver, but apparently unwritten terms, since the federal waiver letter appears to be unambiguous on its face.[6] At best, this argument is premature. At this stage, defendants

---

[6] Essentially, defendants seem to argue that implicit in creating a cap for eligibility is the state's right to terminate or slowly reduce to nothing the number of participants. This not only would appear to require evidence as to the parties intent, it also appears to be undermined by the plain terms of the agreement.

cannot seek to dismiss the complaint for failure to state a claim by invoking the specter of arguments that they may later raise in defense or, at least, on a more complete record.


ORDER

IT IS ORDERED that:

(1) defendants' motion to dismiss (dkt. #2) is DENIED;

(2) plaintiffs' motion to intervene (dkt. #12) is GRANTED; and

(3) the court will convene a telephonic status conference before Judge Conley on July 24, 2013, at 9:00 a.m. to restart the schedule for this case.  Plaintiffs to initiate the call to the court.


Entered this 17th day of July, 2013.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

14